UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------

HARRY T.,

                     Plaintiff,       <u>DECISION AND ORDER</u>
                                              1:25-cv-00695-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
-----------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

In June of 2022, Plaintiff Harry T.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Pierre Pierre Law, P.C., Eddy Pierre Pierre, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

This case was referred to the undersigned on July 2, 2025. Presently pending are the parties' requests for judgment on the pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. For the following

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reasons, Plaintiff's request is due to be granted, the Commissioner's request is denied, and this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on June 7, 2022, alleging disability beginning March 1, 2020. (T at 92, 194-95).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on February 22, 2024, before ALJ Kimberly Schulz. (T at 44-71). Plaintiff appeared with an attorney and testified. (T at 49-62). The ALJ also received testimony from Jennifer Akin, a vocational expert. (T at 64-70).

### B.    *ALJ's Decision*

On March 15, 2024, the ALJ issued a decision denying the application for benefits. (T at 8-28).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2020 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2027 (the date last insured). (T at 13).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 8.

The ALJ concluded that Plaintiff's bilateral tears of the rotator cuffs of the shoulders, the residual effects of surgical arthroscopic repairs, degenerative changes of the right ankle, status post arthroscopic surgery, diabetes mellitus, and obesity were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 16).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours and sit for 6 hours, with normal breaks, during an 8-hour workday; occasionally reach overhead with the bilateral upper extremities; and occasionally stoop, kneel, crouch, crawl, and balance; but cannot perform work that requires exposure to unprotected heights or moving mechanical parts. (T at 16).

The ALJ concluded that Plaintiff could perform his past relevant work as a security guard as that work was actually performed by Plaintiff and as

generally performed in the national economy and could perform his past relevant work as a corrections officer as he actually performed it. (T at 21).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between March 1, 2020 (the alleged onset date) and March 15, 2024 (the date of the ALJ's decision). (T at 22).

On November 25, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on January 23, 2025. (Docket No. 1).  On May 23, 2025, Plaintiff filed a brief in support of a request for judgment on the pleadings. (Docket No. 11).  The Commissioner on July 25, 2025, interposed a brief in opposition to the request and in support of a competing request for judgment on the pleadings. (Docket No. 13).  On August 15, 2025, Plaintiff submitted a reply brief. (Docket No. 14).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear,

remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises two main arguments in support of his request for reversal of the ALJ's decision. First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination. Second, he challenges the ALJ's consideration of his subjective complaints. The Court will address each argument in turn.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)). The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

Here, the record contains multiple medical opinions regarding Plaintiff's physical and mental functioning.

1. *Physical Functioning*

Dr. Arnold Wilson completed a "lower extremity questionnaire" in July of 2022. Dr. Wilson, an orthopedist, reported that he had treated Plaintiff approximately every 6 weeks for 4 years. (T at 1025). He diagnosed left

shoulder rotator cuff repair and characterized Plaintiff's prognosis as guarded. (T at 1025). Dr. Wilson noted limited range of motion and muscle weakness in Plaintiff's left shoulder. (T at 1025). He rated Plaintiff's pain as 8/10 and fatigue as 9/10 and opined that Plaintiff could sit, stand, or walk for 8 hours in an 8-hour workday and frequently lift/carry up to 5 pounds (but never lift or carry any weight greater than that). (T at 1027).

Dr. Wilson believed Plaintiff's symptoms would likely increase if he was placed in full-time competitive employment and opined that Plaintiff was incapable of even low stress work. (T at 1029). Dr. Wilson stated that Plaintiff would likely be absent from work more than 3 times per month due to his impairments or treatment. (T at 1029).

Dr. Manuel Paz performed a consultative examination in August of 2022. Dr. Paz diagnosed bilateral shoulder pain and right ankle pain. (T at 1458). Dr. Paz assessed marked limitation in Plaintiff's ability to lift, carry, push, pull, and reach overhead, along with marked impairment with respect to prolonged standing and walking and performing activities requiring foot control on the right side. (T at 1459).

In September of 2022, Dr. S. Naroditsky, a non-examining State Agency review physician, opined that Plaintiff could perform a range of light work with occasional overhead bilateral reaching. (T at 83-86).

Dr. John Fkiaras performed a consultation examination in February of 2023. He diagnosed bilateral shoulder pain, history of right and left shoulder surgery, history of right ankle surgery, right ankle pain, bilateral wrist pain, left knee pain, headaches, sleep apnea, hypertension, and diabetes. (T at 1536-37).

Dr. Fkiaras opined that Plaintiff had marked limitation with respect to driving, operating machinery, and working at unprotected heights; moderate to marked limitation in reaching with the right upper extremity; marked limitation as to repetitive heavy lifting, carrying, pushing, and pulling; moderate to marked impairment with squatting; and moderate limitation in standing for prolonged periods. (T at 1537).

In March of 2023, Dr. J. Randall, another non-examining State Agency review physician, opined that Plaintiff retained the ability to perform light work with occasional bilateral overhead reaching. (T at 98-99).

The ALJ deemed the opinions of Dr. Wilson, Dr. Paz, and Dr. Fkiaras unpersuasive, finding the marked impairments assessed by the treating and examining physicians inconsistent with the treatment record and examination findings, which the ALJ believed did not substantiate that degree of limitation. (T at 19-20). The ALJ concluded that the non-

examining State Agency review physician opinions were supported by, and consistent with, the record. (T at 20-21).

For the following reasons the Court finds a remand is required.

First, the ALJ considered each of the treating and examining medical opinions in insolation, finding them inconsistent with her reading of the record, without accounting for the significant consistency of the opinions with *each other*.

Stated simply, the ALJ was obliged to exercise caution before deeming unpersuasive the views of every treating and examining provider who provided an opinion regarding Plaintiff's functional limitations. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020) ("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023) (collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Second, while the ALJ acknowledged Dr. Wilson's status as a treating physician, with an orthopedic specialty, it is not clear from the decision that the ALJ gave sufficient consideration to Dr. Wilson's opportunity to observe and assess Plaintiff on a regular basis for 4 years.

Although the treating physician rule no longer applies, the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new medical opinion review standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec*., No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Third, although the non-examining State Agency physicians' opinions provide support for the ALJ's decision, this is not sufficient even under the deferential standard of review applicable here.  *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990); *Gutierrez v. Kijakazi*, No. 21CV3211JPOVF, 2022 WL 16856426, at *16 (S.D.N.Y. Sept. 29, 2022), *report and recommendation adopted*, No. 21-CV-3211 (JPO), 2022 WL 16856936 (S.D.N.Y. Nov. 9, 2022).

Moreover, Dr. Naroditsky and Dr. Randall apparently (and inexplicably) believed their conclusion that Plaintiff could perform a range of light work was *consistent with* the consultative examiners' assessments of marked impairment. (T at 83, 97).  The ALJ failed to recognize or address this contradiction.

Lastly, the ALJ erred in determining that Plaintiff could perform a range of light work without assessing his work-related abilities on a function-by-function basis.

It is well-settled that before determining a claimant's RFC based on exertional levels (sedentary, light, medium, heavy, or very heavy), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945.

The work-related functions include physical abilities (standing, sitting, walking, lifting, carrying, pushing, pulling), mental abilities (understanding, remembering, carrying out instructions, and responding to supervision), and other abilities that may be impacted by impairments (seeing, hearing, ability to tolerate environmental factors). *See* SSR 96-8P; *see also* 20 C.F.R. § 404.1545(b)-(d); id. § 416.945; *Cichocki*, 729 F.3d at 176.

Although the Second Circuit has not applied a per se rule requiring remand where the ALJ did not provide an "explicit" function-by-function analysis—*see Cichocki*, 729 F.3d at 176; *compare Burrows v. Barnhart*, No. 3:03CV342, 2007 WL 708627, at *13 (D. Conn. Feb. 20,

2007)("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce [ ] a detailed statement in writing"), *with McMullen v. Astrue*, No. 5:05-cv-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008) (remanding because "the ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis")—"remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichock*i, 729 F.3d at 177.

Here, the ALJ failed to assess Plaintiff's capacity to perform relevant functions, despite contrary evidence in the record (i.e., the treating and examining physicians' opinions), and with inadequacies in analysis, as outlined above, that frustrate meaningful review.  A remand is, therefore, needed. *See Gomez v. Saul*, No. 1:19-CV-04708 (ALC), 2021 WL 1172674, at *13 (S.D.N.Y. Mar. 29, 2021).

### 2.  Mental Functioning

Dr. John Walsh performed a consultative psychiatric evaluation in September of 2022.  Dr. Walsh diagnosed posttraumatic stress disorder and assessed mild limitation with respect to Plaintiff's ability to understand,

remember, and apply simple directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; regulate emotion; control behavior and maintain well-being; and maintain personal hygiene and appropriate attire. (T at 1467).

Dr. Walsh opined that Plaintiff had moderate limitation with respect to understanding, remembering, and applying complex directions and instructions, and sustaining an ordinary routine and regular attendance at work. (T at 1467).

The ALJ found Dr. Walsh's assessment of moderate impairment unpersuasive. (T at 20). In contrast to the ALJ's findings regarding physical functioning, the Court finds this aspect of the ALJ's decision supported by substantial evidence and consistent with applicable law.

Dr. Walsh's clinical findings evidenced that Plaintiff had adequate manner of relating, social skills, and overall presentation, with fluent and adequate speech. (T at 1465). Plaintiff's thought processes were coherent, and goal directed and his attention, concentration, and memory skills were only mildly impaired. (T at 1465-66). Treatment notes generally described

Plaintiff as alert and oriented, with normal mood, affect, attention, and concentration. (T at 1283, 1652, 1664, 1708, 1712, 1769).

Additional support for the ALJ's decision to discount the assessment of moderate mental limitation is found in the opinions of the non-examining State Agency review physicians, who opined that Plaintiff did not have a medically determinable mental impairment. (T at 81, 95-96).

The Court finds no error in the ALJ's consideration of Plaintiff's mental functioning.

### B.    Subjective Complaints

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).

Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d

250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a

credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows:  His "ankles and knees give out, constantly all day." (T at 54).  Shoulder pain impacts his ability to sleep, move, and perform activities. (T at 54).  Pain medication causes side effects, including nausea. (T at 55).  Bilateral shoulder surgeries, as well as right ankle surgery, did not provide relief. (T at 56).

He can sit for about 20 minutes, stand/walk for 4 or 5 minutes, and lift about a half-gallon of juice. (T at 58).  He engages in limited daily activities, relying on his fiancée or son to perform most household chores. (T at 60-61).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 17-18).  In particular, the ALJ found Plaintiff's self-reported symptoms "not entirely consistent with the medical evidence and other evidence in the record …." (T at 18).

The ALJ's analysis is undermined by the errors outlined above in discounting the assessments of the treating and examining physicians, which support Plaintiff's subjective complaints.  Therefore, this issue will need to be revisited on remand after proper consideration of that evidence.

In addition, Plaintiff has an extended employment history, including work in demanding jobs (security guard, corrections officer) (T at 248), which reflects favorability on the credibility of his complaints. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work

because of a disability."); *see also Hughes v. Colvin*, No. 15-CV-181S, 2017 WL 1088259, at *6 (W.D.N.Y. Mar. 23, 2017)(noting that "a claimant with an established history of employment is unlikely to be 'feigning disability'")(citation omitted)(collecting cases).

C.    *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

The Court finds a remand for further proceedings required for the reasons outlined above.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's request for judgment on the pleadings is GRANTED; the Commissioner's request for judgment on the pleadings is DENIED; and this case is REMANDED for further

administrative proceedings consistent with this Decision and Order. The

Clerk is directed to enter final judgment in favor of the Plaintiff and then

close the file.

Dated: August 27, 2025                    _s/ Gary R. Jones_
                                          GARY R. JONES
                                          United States Magistrate Judge